FEDERAL DEPOSIT INSURANCE COR-
PORATION, as Manager of the FSLIC
Resolution Fund, Plaintiff,

v.

GELDERMANN, INC., an Illinois corpo-
ration; UMIC, Inc., a Tennessee corpo-
ration; Charles Alex Denny; Arthur A.
Wallace; Bryan F. Green; and Gregg
Crosby, Defendants.

No. Civ-89-609-T.

United States District Court,
W.D. Oklahoma.

Nov. 9, 1990.

Douglas G. Thompson, Thomas J. Lough-
ran, Arthur J. Salzberg, Steven Rosenberg,
Finkelstein, Thompson & Lewis, Washing-
ton, D.C., Kenneth I. Jones, Jr., Jones, Bla-
ney & Williams, Oklahoma City, Okl., for
plaintiff.

A. David Necco, Dyer, Necco & Byrd,
Oklahoma City, Okl., James W. McDonnell,
Jr., Robert L. Crawford, Robert A. Mc-
Lean, McDonnell Boyd, Memphis, Tenn.,
Patrick M. Ryan, Phil C. Neal, Timothy
Charles E. Geister, III, J. Carey, Ryan,
Corbyn & Geister, Mark T. Carber, George

W. Dahnke, Hastie & Kirschner, Oklahoma City, Okl., David J. Sneed, Memphis, Tenn., Peter B. Bradford, Joel C. Hall, Daugherty, Bradford, Fowler & Moss, Oklahoma City, Okl., Philip T. Powers, Altheimer & Gray, Chicago, Ill., Peter B. Newton, Timothy J. Carey, Neal, Gerber & Eisenberg, Chicago, Ill., for defendants.

## ORDER CONFIRMING GOOD FAITH SETTLEMENT

RALPH G. THOMPSON, Chief Judge.

### I. *Introduction*

At issue is the Motion for Order Confirming Good Faith Settlement filed by plaintiff, Federal Deposit Insurance Corporation, as Manager of the FSLIC Resolution Fund ("FDIC"). FDIC subsequently filed a supplemental brief. Defendants Geldermann, Inc., UMIC, Inc., Charles Denny, and Arthur Wallace filed briefs in opposition. The former directors of Universal Savings Association, F.A. of Chickasha, Oklahoma, filed an amicus curiae brief. FDIC also filed a reply brief. Defendants urge the Court to deny FDIC's motion outright, but if not, they urge this Court to adopt a federal common law settlement bar rule. FDIC and amicus argue that the Court should adopt a pro tanto settlement bar rule. Defendants argue that the Court should adopt the proportionate settlement bar rule. There is also a dispute to resolve as to whether the settlement in *FDIC v. Sevier*, No. CIV–87–2015–R (W.D.Okla.) was made in good faith. Judge Russell confirmed the good faith settlement in that case on March 13, 1990. *Order Confirming Good Faith Settlement*, No. CIV–87–2015–R (W.D.Okla. Mar. 13, 1990). However, the good faith issue is irrelevant under the proportionate settlement bar rule, and need only be addressed should the Court rule in favor of the pro tanto settlement bar rule. FDIC's Reply Brief at 2 n. 3 (June 8, 1990). For the reasons set forth below, the Court CONFIRMS the Good Faith Settlement Agreement entered in *FDIC v. Sevier*, No. CIV–87–2015–R (W.D. Okla. Mar. 13, 1990).

### II. *Background Facts*

The FDIC has concluded a Settlement Agreement (the "Agreement") with the former directors ("Directors") of Universal Savings Association, F.A., of Chickasha, Oklahoma ("Universal") and with Michael L. Harris ("Harris"), former President of Universal. The FDIC is asserting claims against the Directors and Harris in two other cases, *FSLIC v. Sevier*, No. CIV–87–2015–R (W.D.Okla.) (the "Sevier Action"), and *FSLIC v. First Investment Securities, Inc.*, No. LR–C–85–778 (E.D.Ark.) (the "FIS Action"), but not in this case. The Agreement settles, with only a few exceptions, all of the FDIC's claims against the Directors and Harris in those other two cases and releases the FDIC's potential claims against them in this case, although they are not parties.

The Directors and Harris will not settle the cases to which they are parties unless this Court enters an order barring possible contribution and indemnity claims against them in this case. Likewise, the FDIC will not release its claims (asserted and unasserted) unless the effect of the settlement on FDIC's potential recovery from the defendants in this lawsuit is finally determined. Therefore, the FDIC has moved in this case for an Order Confirming Good Faith Settlement that will (i) bar claims for contribution and indemnity against the Directors and Harris; and (ii) provide that this settlement will result in a maximum aggregate setoff of $725,000, which is the maximum value of the consideration received by the FDIC, against judgments subsequently obtained in cases brought by the FDIC in connection with the failure of Universal.

Universal was placed in receivership by federal regulatory authorities on February 13, 1987, after it was found to be insolvent and to have suffered substantial dissipation of assets of earnings due to violations of law and regulations. The Receiver transferred the institution's claims to the Federal Savings & Loan Insurance Corporation in its corporate capacity ("FSLIC"). FSLIC thereafter

became a party to three separate lawsuits stemming from the failure of Universal. In the three cases described below, it asserted claims as assignee of Universal and on behalf of the deposit insurance fund that paid Universal's depositors. As a result of the enactment of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), the FDIC was substituted for FSLIC as a party to all three proceedings in August 1989. *See* FIRREA §§ 215, 401.

*The FIS Action*

In November 1985, Universal filed an action in the United States District Court for the Eastern District of Arkansas against Harris, First Investment Securities, Inc., and certain principals in First Investment Securities, alleging fraud in the purchase and sale of securities. Harris filed third party claims against the Directors in April 1986.

In March 1987, after Universal was declared insolvent and FSLIC was substituted as plaintiff, FSLIC filed an amended complaint naming the Directors as defendants and asserting claims for breach of fiduciary duty, negligence, and waste of corporate assets.

*The Sevier Action*

On August 27, 1987, acting on a motion filed by the Directors, the Arkansas district court presiding over the FIS Action transferred all claims against the Directors, including FSLIC's claims and Harris's third party claims, to the United States District Court for the Western District of Oklahoma. Those claims are now pending in a separate case in the District referred to as the Sevier Action. FSLIC, and later the FDIC, have since that time pursued their claims against the Directors in that case.

*The Geldermann Action*

In the instant action, filed in April 1989, the FDIC, as successor to FSLIC, seeks to recover damages suffered by Universal through transactions in the financial futures and options markets entered into as a result of the wrongful actions of Geldermann, Inc. and other

defendants, but not the Directors or Harris....

FDIC's Brief at 1–3 (Mar. 9, 1990).

### III.  *Issues*

1.  Whether the pro tanto settlement bar rule can be applied to bar contribution claims of defendants and limit setoff amounts in an action with the FDIC, when the pretrial settlement agreement was made between FDIC and nonparties on other claims; and if so, then

2.  Whether the settlement was made in good faith.

### IV.  *Analysis*

■  At the outset the Court finds that federal common law applies to this case. *United States v. Van Diviner*, 822 F.2d 960, 963 (10th Cir.1987). This is especially so when the FDIC is a party as such cases are "deemed to arise under the laws of the United States." 12 U.S.C. § 1819(b)(2)(A), as amended by the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") § 209, 103 Stat. 216; *D'Oench Duhme & Co. v. FDIC*, 315 U.S. 447, 471, 473, 62 S.Ct. 676, 686, 687, 86 L.Ed. 956 (1942) (Jackson, J., concurring); *Jones v. FDIC*, 748 F.2d 1400, 1402 (10th Cir.1984) ("[F]ederal law controls the rights and obligations of the FDIC.").

■  Under joint and several liability, plaintiff may seek full satisfaction from any tortfeasor, regardless of comparative fault. Contribution provides the appropriate mechanism for joint tortfeasors to adjust damages to match their relative liability based on proportionate fault. *Miller v. Christopher*, 887 F.2d 902, 904 (9th Cir. 1989).

This case presents unique problems for the Court because FDIC seeks to limit the setoff amount and bar defendants in this suit from bringing a contribution or indemnity action against defendants in another, related suit who settled their case with FDIC on the condition in part that FDIC obtain the bar order here. "A settling defendant is entitled to a bar against contribution. Any other rule would inhibit settlement of claims...." *Westheimer v. Finesod (In re Terra–Drill Partnerships Sec. Litig.)*, 726 F.Supp. 655, 656 (S.D.Tex.

1989), *later proceeding*, 733 F.Supp. 1127 (1990). The driving policy behind this rule is to encourage settlement of multiparty litigation. *Id.* "In essence, a bar order constitutes a final discharge of all obligations of the settling defendants and bars any further litigation of claims made by nonsettling defendants against settling defendants." *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir.1989). "Anyone foolish enough to settle without barring contribution is courting disaster." *In re Nucorp Energy Sec. Litig.*, 661 F.Supp. 1403, 1408 (S.D.Cal.1987). *But see Donovan v. Robbins*, 752 F.2d 1170, 1180–81 (7th Cir.1984) (rejecting bar rule altogether). There is no Tenth Circuit authority directly on point in this perplexing matter. There is other circuit authority within the securities context between settling and nonsettling defendants within the same suit. However, as fully developed below, the two circuits that have spoken on the issue have taken divergent paths.[1] *Compare Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir.1989) (adopting the pro tanto settlement bar rule), *cert. denied*, —— U.S. ——, 110 S.Ct. 729, 107 L.Ed.2d 748 (1990); *accord In re Nucorp Energy Sec. Litig.*, 661 F.Supp. at 1408–10 (federal securities context); *Kirkorian v. Borelli*, 695 F.Supp. 446, 448–54 (N.D.Cal.1988) (class action federal securities context) *with Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1232 (9th Cir.1989) (adopting the proportionate settlement bar rule as a part of federal common law); *accord FDIC v. Strategic Inv. Serv., Inc.*, No. 88–0769B (IEG), slip op. at 36–47 (S.D.Cal. Aug. 2, 1990) (criticizing good-faith determination). *But cf. Miller v. Christopher*, 887 F.2d 902, 906 (9th Cir.1989) (affirming pro tanto rule in admiralty context and mentioning *Kaypro* only in passing).[2]

A. *Types of Settlement Bar Rules*

Courts have developed three distinct settlement rules to bar contribution claims of nonsettling parties.

1. *Pro Tanto Rule.*

Under the [pro tanto] rule, when a plaintiff receives a settlement from one defendant, a nonsettling defendant is entitled to a credit of the settlement amount against any judgment obtained by the plaintiff against the nonsettling defendant as long as both the settlement and judgment represent common damages.

*Singer v. Olympia Brewing Co.*, 878 F.2d at 600.

The algebraic formula for this rule is (S — X) + (N + X) = T where T equals the total amount of damages determined at trial; S equals the relative culpability of settling parties; N equals the relative culpability of nonsettling parties; X equals the amount of money settlors were culpable for, but did not have to pay due to settlement. *Franklin v. Kaypro Corp.*, 884 F.2d at 1230 n. 15. Therefore, if X is equal to or greater than $1, then nonsettlors must pay more than they are relatively culpable for under the pro tanto rule and are barred from recourse from settling parties. Nonsettling parties still retain a right of contribution as to one another.

The pro tanto rule has evolved from the one satisfaction rule which was approved in *Restatement (Second) of Torts* § 885(3) (1979):

A payment by any person made in compensation of a claim for a harm for which others are liable as tortfeasors diminishes the claim against the tortfeasors, at least to the extent of the payment made, whether or not the person making the payment is liable to the injured person and whether or not it is so agreed at the time of payment or the payment is made before or after judgment.

*Quoted in Singer v. Olympia Brewing Co.*, 878 F.2d at 600; *see generally* Harris,

---

1. This is the classical Scylla and Charybdis situation for this Court. Charybdis was a mythical whirlpool off the Sicilian coast, and was opposite the cave of Scylla. Scylla was a female sea monster who devoured sailors who approached too closely.

2. Most recently the issue was presented to the Fifth Circuit, but it was found to be moot without comment. *FDIC v. Mmahat*, 907 F.2d 546, 550 & n. 4 (5th Cir.1990) (remanding case to determine what portion of settlement was attributable to legal malpractice defendant).

*Washington's Unique Approach to Partial Tort Settlements: The Modified Pro Tanto Credit and the Reasonableness Hearing Requirement,* 20 Gonz.L.Rev. 69, 88–90, 103–05, 167 (1984–85).

### 2. Proportionate Rule.

In class action securities litigation the proportionate rule has been applied based on the policy that defendants should pay according to their actual, relative culpabilities. *Franklin v. Kaypro Corp.,* 884 F.2d at 1222 & 1229 n. 13. This scheme permits a potential settlement. The nonsettling defendants are then barred from further rights of contribution from the defendants who have settled. The jury determines the total dollar damages, and the percentage of culpability of all defendants. The settling defendants pay their percentage of damages, and nonsettling defendants are jointly and severally liable for their percentage of damages, and will retain rights of contribution only as to each other. *Id.* at 1231. The algebraic equation is $T = S + (N1 + N2 + N3 \ldots)$ where T equals the total amount of damages at trial; S equals the settling defendants' relative culpability; and N equals nonsettling defendants' relative culpability. *Id.* at 1230 n. 15 & 1231 n. 17.

### 3. Pro Rata Rule.

Under the pro rata rule the defendants are added up and each is attributed a numerically proportionate share of liability. *See Herzfeld v. Laventhol, Krekstein, Horwath & Horwath,* 540 F.2d 27, 38–39 (2d Cir.1976) (finding that settlement payment of over one-half of liability amount was adequate to remove joint tortfeasor status). This formula is based on each defendant's joint liability, and does not take into account any relative culpability. While this latter characteristic distinguishes the pro rata rule from the proportionate rule, many authorities nonetheless use the terms interchangeably. This confusion of terms has been contagious and

probably can be traced back to the indiscriminate use of the term "pro rata" in comment m to *Restatement (Second) of Torts* § 886A (1979) (contribution among tortfeasors). *Compare, e.g., Miller v. Christopher,* 887 F.2d at 905 *with Westheimer v. Finesod (In re Terra–Drill Partnerships Sec. Litig.),* 726 F.Supp. at 656. The algebraic equation is $T = (S1 + S2 + S3 \ldots + N1 + N2 + N3 \ldots)$ where T equals the total amount of damages at trial; S equals the settling defendants' numerically proportionate share, which is the same as N, the nonsettling defendants' share.

## B. Rule Selection

■ This Court is persuaded that good-faith, pretrial settlement is to be encouraged, and that a settlement bar order is necessary to promote settlement. *Franklin v. Kaypro Corp.,* 884 F.2d at 1225, 1229; *see also Grady v. de Ville Motor Hotel, Inc.,* 415 F.2d 449, 451 (10th Cir. 1969) (favoring settlements in general). The Court is also guided by the FDIC's mission "[t]o put the Federal Deposit insurance funds on a sound financial footing." FIRREA § 101, 103 Stat. 187; *accord FDIC v. Jenkins,* 888 F.2d 1537, 1541 (11th Cir.1989) ("[P]reservation of the permanent insurance fund is vital to the continued health of the nation's banking system."). This Court joins the growing trend that recognizes that a uniform federal settlement bar rule should be adopted.[3] *Franklin v. Kaypro Corp.,* 884 F.2d at 1228; *Singer v. Olympia Brewing Co.,* 878 F.2d at 599; *In re Sunrise Sec. Litig.,* 698 F.Supp. 1256, 1257 (E.D.Pa.1988).

A Ninth Circuit Panel has made a seemingly sound argument for the proportionate bar rule within the class action securities context where statutory goals of punishment and deterrence predominate. *Franklin v. Kaypro Corp.,* 884 F.2d at 1231. However, in the context of FDIC bank officer litigation this Court is persuaded that the pro tanto settlement bar rule is the

---

**3.** It should be noted here that under state law Oklahoma has embraced the pro tanto settlement rule. 12 Okla.Stat. § 832. The FDIC argued that application of this statute, however, is

unpredictable. *E.g., East Cent. Elec. Corp. v. Robert Gordon Equip., Inc.,* 772 F.2d 662, 663 (10th Cir.1985).

more proper of the two rules applied by the circuits. *Singer v. Olympia Brewing Co.*, 878 F.2d at 600. There are two related reasons for this conclusion. First, in bank officer litigation there is a public interest in making the FDIC as whole as possible. There is a compelling federal interest in the FDIC maintaining "the integrity of its insurance fund in order to prevent the federal treasury from having to shoulder the burden of an inadequate fund." *FSLIC v. Frumenti Dev. Corp.*, 857 F.2d 665, 668 (9th Cir.1988); *FSLIC v. Murray*, 853 F.2d 1251, 1256 (5th Cir.1988) (the basic objective is promoting confidence and stability of financial institutions). The practical intent of this policy is to attract and retain depositors by maintaining public confidence in our banking system. "Federal insurance of savings accounts is fundamental to the financial stability of the entire savings and loan industry.... Therefore, if the ability of the FSLIC to meet its insurance commitments is ever called into question, there would be grounds for serious public concern." S.Rep. No. 1263, 90th Cong., 2d Sess. 6–7, *reprinted in* 1968 U.S.Code Cong. & Admin.News 2530, 2535–36. Also, this Court has previously recognized the "public policy concerns flowing from FSLIC's mission to stabilize the nation's economy through taking over the assets of failed savings and loan institutions, and litigating claims with public resources." *FSLIC v. Geldermann, Inc.*, No. CIV–89–609–T, 1989 U.S.Dist. LEXIS 16395,7, [New Developments] Comm.Fut.L.Rep. (CCH) ¶ 24,556 at 36,392 (W.D.Okla. Aug. 1, 1989). In this regard settlements by the FDIC to maximize its recovery on the assets of failed institutions and thus reduce the net cost to the taxpayer is in accord with this widely recognized public policy. The *Kaypro* Panel summarily discounted the goal of making a plaintiff as whole as possible within a class action securities context and simply commented that plaintiffs voluntarily settled, and have many reasons to do so. *Franklin v. Kaypro Corp.*, 884 F.2d at 1231 n. 18; *cf. FSLIC v. Butler*, 904 F.2d 505, 510–11 (9th Cir.1990) (applying state law pursuant to settlement agreement and recognizing objective of full recovery by plaintiff for damages suffered). This Court must disagree when the plaintiff is the FDIC.

Second, within the context of joint and several liability of FDIC bank officer litigation, the pro tanto rule is preferable here, in view of public policy considerations of encouraging meaningful settlement with defendants in regard to their non-exempt assets, and thus conserving the litigation resources of the FDIC to prosecute more fruitful claims against defendants who are not so judgment resistant. This conclusion is reached with due regard for the equitable rights of co-tortfeasors to contribution. Ascertainment of the relative culpabilities of joint tortfeasors is overshadowed by the goal of making the FDIC as whole as feasible. "Promoting full recovery and encouraging partial settlement take precedence over the third policy of enforcing an equitable apportionment of a loss among responsible defendants." Harris, 20 Gonz. L.Rev. at 167. However, the good-faith determination, as a practical matter, upholds the goal of maintaining confidence in the securities market through punishment and deterrence by ensuring that settlors are penalized in relation to their assets and then shifting the remainder of the joint and several liability to nonsettling defendants.

This Court finds that the pragmatic difference between the pro tanto rule and the proportionate rule is in the allocation of risk. *Nelson v. Bennett*, 662 F.Supp. 1324, 1339 n. 24 (E.D.Cal.1987). As the FDIC argues, the pro tanto rule allocates the risk to nonsettling defendants, and therefore encourages plaintiff and settling defendants to settle in reflection of the cost to the plaintiff of trial and any appeal as well as the relative uncertainties of the ultimate outcome. *Id.; see Miller v. Christopher*, 887 F.2d at 908. In sharp contrast the proportionate rule allocates the risk to the plaintiff, here the FDIC, and thus deters plaintiff from settling. The FDIC offers the following hypothetical illustration:

> Assume that a failed federally insured depository institution has suffered $30 million in damage caused by two joint tortfeasors, Director and Accountant.

Assume also that Director's only asset is a directors and officers liability insurance policy with a $1 million per director/officer limit of liability, and that Accountant has well in excess of $30 million in malpractice policy coverage and other assets. The FDIC generally will have little or no incentive under a proportional rule to settle with Director even if the D & O carrier offers the entire $1 million policy limit. The reason is straightforward: if the FDIC settles for the D & O policy limit and the trier of fact eventually finds the Accountant and Director liable for $30 million and concludes that Director was 30% liable and Accountant was 70% liable, the FDIC will receive only $22 million in total compensation ($1 million from settling Director and $21 million from judgment debtor Accountant). Had the FDIC instead proceeded to trial against both Accountant and Director and obtained the same $30 million judgment for joint and several liability against them both, it could have collected the $30 million from Accountant's insurance carrier and assets, leaving Accountant and its carrier to attempt to collect from Director (whose $1 million D & O policy probably by then would have been fully depleted as a result of Director's legal fees). As this example illustrates, a plaintiff interested in a partial settlement in a proportional rule jurisdiction confronts two critical uncertainties that *deter* plaintiffs from settling: (i) the amount of damage that will eventually be awarded by the trier of fact, and (ii) the relative degree of fault that the trier of fact will eventually place on the settling defendants.

FDIC's brief at 15 (Mar. 9, 1990). Under the circumstances of this case, the proportionate rule allocates the burden of risk on the FDIC while the pro tanto rule does not. The Court finds that the pro tanto rule is preferable because the risk should more rightfully be allocated to joint-tortfeasors.

The interests of the nonsettling defendants are protected by the good-faith determination of the settlement agreement. In this case the Court can review affidavits and the net worths of the settling parties, which have been filed under seal for the Court's in camera review, and thus determine whether the settlement amount has a reasonable relationship with the ascertainable proceeds that may be derived following more protracted and expensive litigation. After all, a contribution right against a settlor with limited, non-exempt resources is of limited value. Retention of a would-be settlor makes the litigation process needlessly more complex and expensive, as well as impedes access to litigation for more fruitful claims. The pro tanto rule is more compatible with the principle of joint and several liability within the FDIC settlement context.

Confirming the good faith settlement in this case is consistent with the Tenth Circuit's guidance regarding credit for settlements. *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1236 (10th Cir.1988):

> It is a fundamental legal principle that an injured party is ordinarily entitled to only one satisfaction for each injury. *Harris v. Union Elec. Co.*, 846 F.2d 482, 485 (8th Cir.1988). When a plaintiff receives an amount from a settling defendant, therefore, it is normally applied as a credit against the amount recovered by the plaintiff from a non-settling defendant, provided both the settlement and the judgment represent common damages. *Howard v. General Cable Corp.*, 674 F.2d 351, 358 (5th Cir.1982)....

*Id.* (footnote and additional citations omitted);[4] *see also Sears v. Atchison, Topeka & Santa Fe Ry.*, 749 F.2d 1451, 1455 (10th Cir.1984) (criticizing the proportionate rule in principle and affirming the pro tanto rule in principle in a Title VII action), *cert. denied sub nom.*, 471 U.S. 1099, 105 S.Ct. 2322, 85 L.Ed.2d 840 (1985); *Miller v. Apartments & Homes of N.J., Inc.*, 646 F.2d 101, 109–10 (3d Cir.1981) (favoring pro tanto rule despite its drawbacks over pro rata rule in civil rights litigation). The pro tanto rule was also endorsed by the Nation-

---

**4.** FDIC contends in this regard that not all alleged damages in this case are common, and this issue will be determined at trial. FDIC's Brief at 23 n. 27 (Mar. 9, 1990).

al Conference of Commissioners on Uniform Laws (amending the Uniform Contribution Among Tortfeasors Act in 1955). *Handbook of the National Conference of Commissioners on Uniform State Laws and Proceedings of the Forty–Ninth Annual Conference Meeting in its Sixty–Fourth Year* at 218, 223–24 (Aug. 15–20, 1955). The *Kaypro* Panel acknowledged that the strongest argument for adoption of the pro tanto rule was its adherence to the one satisfaction rule embraced by the Tenth Circuit in *Touche Ross,* 854 F.2d at 1236. This was so because unless the settlement was larger than the damage award at trial, then the combined amounts paid by settlors and nonsettlors can never be larger than the total amount of damages sustained by plaintiffs because the settlement is setoff from the total amount. *Franklin v. Kaypro Corp.,* 884 F.2d at 1230 & n. 14. While the *Kaypro* Panel found the advantages of the pro tanto rule illusionary within the class action securities context, this Court finds the *Kaypro* Panel's arguments to be without force within the context of bank officer liability litigation brought by the FDIC. *Id.* at 1230. Again, this is simply so because of the primary emphasis on culpability within the private securities arena compared with encouraging settlement and making the FDIC whole within the bank officer liability arena. "It is well settled, as a matter of sound policy, that the law should favor the settlement of controversies...." *Grady v. de Ville Motor Hotel, Inc.,* 415 F.2d at 451.[5]

The *Kaypro* Panel also believed that a full evidentiary hearing would be necessary to determine relative culpabilities. *Franklin v. Kaypro Corp.,* 884 F.2d at 1230. This Court is not as concerned with the culpability issue, and believes that the *Kaypro* Panel's argument regarding an evidentiary hearing that would negate many of the benefits of settlement is inapplicable here where the Court finds no need to conduct such a hearing as good faith can be ascertained by the papers on file. *Id.* Moreover, the *Kaypro* Panel's concern about collusion within the class action securities context is also inapplicable here. Within that context there was a concern expressed that a low partial settlement would be used to finance trial litigation with wealthier defendants. *Id.* at 1230. This is not really a concern in FDIC litigation where litigation is funded with public resources or on a contingency basis. Moreover, another Ninth Circuit Panel found that when the district court is confronted with the choice of approving a pro tanto bar rule or having no settlement at all, as this Court faces, then choosing the settlement is the wiser course.[6] The *Miller* Panel also noted that even in the absence of a settlement agreement there is no guarantee against collusion between plaintiff and some defendants against other defendants. *Miller v. Christopher,* 887 F.2d at 907.

Another district court has adopted the pro tanto rule and made the sound argument that the pro tanto rule is much easier in application, thus eliminating large portions of the trial as the jury need not determine the relative fault of all parties, including those no longer participating in the trial. *Dalton v. Alston & Bird,* 741 F.Supp. 157, 160 (S.D.Ill.1990) (attached to FDIC's Supplemental Brief (July 26, 1990)); *accord Westheimer v. Finesod (In re Terra–Drill Partnerships),* 726 F.Supp. at 656–57. *But see FDIC v. Strategic Inv. Serv., Inc.,* No. 88–0769B (IEG), slip op. at 36–47; *accord Alvarado Partners, L.P. v. Mehta,* 723 F.Supp. 540, 552–53 (D.Colo. 1989); *In re Sunrise Sec. Litig.,* 698 F.Supp. at 1257.

As a general rule nonsettling parties have no input into the terms of settlement agreements with other parties. The FDIC has standing to bring this motion, and the Court is not persuaded to deny it because

---

**5.** This Court's confirmation of the Settlement Agreement will not only help settle *Sevier,* but will, according to FDIC, affect numerous defendants in a number of complex, multiparty cases presumably nationwide. The Settlement Agreement is still subject to confirmation in *FIS,* which is pending in the Eastern District of Arkansas.

**6.** The Court notes that according to the Settlement Agreement FDIC could still affirm in the event a proportionate rule was adopted; however, that action is speculative.

the agreement affects new claims brought in this suit that were not brought in *Sevier* and *FIS*. The Court is not persuaded that because FDIC's settlement was with non-parties to the present action that this is reason to not confirm the settlement. Non-settling defendants in this suit have had an opportunity to object to the settlement, and have done so. The Court cannot see that these defendants' posture would be any different if settlors were parties to the instant suit. Although this case presents an unprecedented situation, the Court believes it can rely on the authorities where defendants were all parties to the same suit. Defendants here have not convinced this Court to proceed otherwise.

## V. *Determination of Good Faith*

■ The Court has reviewed the settlement agreement, pleadings, affidavits and evidence including financial statements filed under seal for in camera inspection. See *Order* (Sept. 4, 1990) (granting FDIC's motion to file redacted and unredacted financial statements of settling bank officers under seal). Defendants were provided copies of edited financial statements. As previously noted, another judge in this district has confirmed the settlement agreement as being made in good faith. The Court notes that the bank officers' liability insurer was involved in the settlement negotiations, which transpired over many months beginning in August 1987 and ended with the signing of an agreement on September 6, 1989. The Court finds that the settlement was reached in good faith under fully adversarial conditions, and was the result of arms-length bargaining. This finding is supported by the insurer's satisfaction of the strength of FDIC's claims and the reasonableness of the settlement. This finding is further supported by the participation of Magistrate Irwin who served as a settlement judge. *See generally Kirkorian v. Borelli*, 695 F.Supp. at 450; *In re Nucorp Energy Sec. Litig.*, 661 F.Supp. at 1408–09. There were also attempts to enforce a prior settlement agreement. The Court is persuaded that the settlement is prudent because the limited liability insurance policy of settlors is a "wasting" asset policy in which the costs of

defense and fees reduce the amount available under the policy. The Court further notes that Michael Harris, the former President of Universal Savings Association, filed a Chapter 7 bankruptcy on August 7, 1986, and received a discharge of any claims by FDIC.

Finally, the Court finds that the maximum amount that can be setoff from any judgment against nonsettling defendant is reasonable. There was adequate consideration paid by settlors, and even settlors' cooperation with FDIC in the prosecution of its claims against defendants in the instant action has value. *See* FDIC's Reply Brief at 6 n. 11 (June 8, 1990) (stipulation). The risk of trial and appeal is also taken into account. It is this Court's finding that the settlement agreement was noncollusive and entered in good faith. There was an honesty of purpose and an absence of any intention to defraud. Despite extensive discovery, the defendants have not convinced this Court otherwise. *Id.* at 1 n. 2. The terms of the agreement do not show collusion. The settlement maximizes the recovery of the FDIC, and the Court finds that settlors were unable to significantly contribute collectively to a financial resolution of the case beyond the terms of the settlement agreement.

## VI. *Conclusion*

Accordingly, the Good–Faith Settlement Agreement entered into in *FDIC v. Sevier*, No. CIV–87–2015–R (W.D.Okla. Mar. 13, 1990) is CONFIRMED. The Court further ORDERS as follows:

1. The issues raised in the motion are governed by federal common law.

2. The definitions set forth in section 1 of the Settlement Agreement shall apply to this Order.

3. The proposed settlement set forth in the Settlement Agreement is noncollusive and is therefore approved as having been made in good faith.

4. All claims for contribution and/or indemnity that have been, or could be, asserted against the settling parties by any party to this action are barred and the future filing of such claims is hereby enjoined.

Any cross-claim, third-party claim, counter-claim, or other claim asserted in this action by any party against any settling party for contribution and/or indemnity is hereby DISMISSED WITH PREJUDICE.

5. All claims for contribution and/or indemnity that have been, or could be, asserted by any settling party against any party to this action are BARRED and the future filing of such claims is hereby ENJOINED. Any cross-claim, third-party claim, counter-claim, or other claim asserted in this action by any settling party against any party to this action for contribution and/or indemnity is hereby DISMISSED WITH PREJUDICE.

6. All judgments that FDIC may eventually be awarded against any tortfeasors other than the settling parties, including the parties to this action, who are liable in tort to FDIC as joint tortfeasors with the settling parties are reduced in the aggregate by $725,000 ("the setoff amount"). This setoff amount is the aggregate amount of the reduction, as a result of the Settlement Agreement, in any judgments FDIC is eventually awarded against the nonsettling joint tortfeasors and is not intended to be treated and should not be treated as (i) a reduction to be applied to each judgment that FDIC is eventually awarded against the nonsettling joint tortfeasors or (ii) a further reduction in addition to any reduction accomplished by a setoff amount referred to in the Order Confirming Good Faith Settlement that either has been, or may be, issued by the District Court in the *Sevier* action, the *FIS* action, or the declaratory judgment action; in other words, the setoff amount referred to herein and the setoff amount referred to in the Order entered, or to be entered, in the *Sevier* action, the *FIS* action, or the declaratory judgment action are not cumulative.

7. The Clerk of the Court shall enter a final judgment upon this Order, prepared by FDIC, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, dismissing with prejudice such claims as are referred to in numbered paragraphs 4 and 5 of this section and barring such claims as are referred to in numbered paragraphs 4 and 5 of this section. W.D.Okla.R. 23(A).

8. Pursuant to Rule 54(b), I hereby certify that there is no just reason for delay in the entry of final judgment of this Order.

9. This Order and the judgment thereon shall be null and void on the Settlement Agreement termination date, if the Settlement Agreement terminates under section 3(b) of the Settlement Agreement.

IT IS SO ORDERED.