954 F.2d 575
 60 USLW 2489, Fed. Sec. L. Rep. P 96,486
 EMPLOYERS INSURANCE OF WAUSAU, Federal Insurance Company,
Plaintiffs-Appellants,
v.
MUSICK, PEELER & GARRETT, a Partnership; Leonard Castro, an
Individual, Robert Schuchard, an Individual, K.M.G. Main
Hurdman, a Partnership, Peat, Marwick, Main & Co., a
Partnership, J.H. Cohn & Co., a Partnership, Ed Bacani, an
Individual, Robert Torkar, an Individual, Does 1 thru 100,
and Does 1 thru 300, Inclusive, Defendants-Appellees.
 No. 90-55791.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 6, 1991.
Decided Jan. 23, 1992.
 
 Lawrence H. Nagler, Nagler & Schneider, Beverly Hills, Cal., for plaintiffs-appellants.
 William J. Reifman, Mayer, Brown & Platt, Los Angeles, Cal., Charles A. Bird, Luce, Forward, Hamilton & Scripps, San Diego, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of California.
 Before GOODWIN, PREGERSON and ALARCON, Circuit Judges.
 GOODWIN, Circuit Judge:
 
 
 1
 The securities fraud contribution question left open in Franklin v. Kaypro Corp., 884 F.2d 1222 (9th Cir.1989), cert. denied sub nom., Franklin v. Peat Marwick Main & Co., --- U.S. ----, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990) is presented in this appeal by insurance carriers who are subrogated to the contribution rights of settling defendants (their insureds).
 
 
 2
 The plaintiffs seek recovery against nonparties now alleged to be culpable in the original public offering that resulted in the underlying litigation. Kaypro held that the district court could properly bar the nonsettling defendants from seeking contribution from the settling defendants, and held further that the nonsettling defendant's exposure should be limited to their actual percentage of liability based upon their culpability as determined by trial. Kaypro left open the contribution liability of nonparties who would have been defendants had they been sued by the original plaintiffs, but who were, for various reasons, not named as parties and thus were not participants in the settlement negotiations.
 
 
 3
 Employers Insurance of Wausau (Wausau) and Federal Insurance Co. (Federal), insurers of the settling defendants in a securities fraud class action, In re Cousins Securities Litigation, No. 84-1821-(IEG), appeal the dismissal of their action for contribution under federal law and for comparative equitable indemnity under state law against the defendants, persons who were the attorneys and accountants of the insureds in the public offering that gave rise to the class action suit.
 
 
 4
 Shareholders of Cousins Home Furnishings, Inc. filed the class action against insureds--Cousins, along with its holding company, certain of its officers and directors, and its two lead underwriters--alleging violations of federal securities law and California corporations law in connection with a public offering in 1983. The shareholders did not, however, sue, nor did insureds implead the attorneys and accountants involved in the underlying transaction. All defendants in the suit entered into a settlement agreement with the plaintiff class agreeing to pay plaintiff shareholders $13.5 million, an amount determined by a federal magistrate after a "good faith" hearing to "represent[ ] the settling defendants' fair or proper share of the total damages sought by the plaintiffs."
 
 
 5
 The settlement contained a general release from liability, including the release of potential claims by the plaintiff class against insureds' attorneys and accountants, even though they were not defendants. At the time of the agreement, the statute of limitations had already run on claims by the plaintiff class against the non-party lawyers and accountants. Although agreeing to the settlement, insureds expressly denied liability. Wausau and Federal (the "Insurers") have paid their appropriate percentages of the settlement amount.
 
 
 6
 The Insurers now assert the right, as insureds' subrogees, to sue the attorneys and accountants. Insurers' complaint, which resembles the shareholders' complaint against insureds in the class action, alleges various misrepresentations that defendants caused insureds to make to investors about matters germane to the public offering, in violation of section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 of the Securities Exchange Commission, 17 C.F.R. § 240.10b-5.
 
 
 7
 Holding that a settling defendant who has paid no more than its fair share of the total liability is not entitled to contribution under federal securities law, the district court dismissed the action without leave to amend for failure to state a claim upon which relief may be granted, pursuant to Fed.R.Civ.P. 12(b)(6). This court reviews the granting of a 12(b)(6) motion de novo. Massey v. Inland Boatmen's Union of Pacific, 886 F.2d 1188, 1189 (9th Cir.1989). Because we find that the Insurers have stated a valid claim for contribution, we reverse.
 
 
 8
 No explicit right to contribution is provided for in section 10(b) of the Securities Exchange Act of 1934 or Rule 10b-5. We have recognized, however, that these provisions imply a right of contribution. See Kaypro, 884 F.2d at 1226; Smith v. Mulvaney, 827 F.2d 558, 561 (9th Cir.1987).
 
 
 9
 Actions for contribution arise in many different procedural settings. For example, contribution may be sought by one defendant against other named defendants by a motion to the court, see Globus, Inc. v. Law Research Service, Inc., 318 F.Supp. 955, 957 (S.D.N.Y.1970), aff'd, 442 F.2d 1346 (2nd Cir.), cert. denied sub nom., Law Research Service, Inc. v. Blair & Co., 404 U.S. 941, 92 S.Ct. 286, 30 L.Ed.2d 254 (1971). An individual seeking contribution is not limited, however, to the parties named by the plaintiff in the original suit. Contribution may be the sought through a third party action pursuant to Rule 14(a) of the Federal Rules of Civil Procedure. See Tucker v. Arthur Andersen & Co., 646 F.2d 721, 727 n. 7 (2nd Cir.1981); Odette v. Shearson, Hammill & Co., Inc., 394 F.Supp. 946, 958 (S.D.N.Y.1975); Liggett & Myers, Inc. v. Bloomfield, 380 F.Supp. 1044, 1047 (S.D.N.Y.1974).
 
 
 10
 While actions for contribution are frequently brought in the context of third party practice, it does not follow that third party procedure is the exclusive remedy. The right of contribution is substantive in nature. "Rule 14, like all of the Federal Rules of Civil Procedure, is purely procedural. It does not create or modify any substantive rights, such as the right to indemnification or contribution." 3 Moore's Fed.Prac., p 14.03. Thus, a claim for contribution may be maintained in a separate action. Heizer Corp. v. Ross, 601 F.2d 330, 334 (7th Cir.1979). See also Restatement (Second) of Torts § 886A(2) comment i (1979) ("A separate action for contribution is also available, particularly against a tortfeasor who was not a party to the original action.").
 
 
 11
 The provisions of the securities laws that explicitly provide for contribution envision the possibility of such claims being brought as separate causes of action. Contribution is not limited to parties involved in the original suit. Section 78r(b), for example, provides:
 
 
 12
 Every person who becomes liable to make payment under this section may recover contribution as in cases of contract from any person who, if joined in the original suit, would have been liable to make the same payment.15 U.S.C. § 78r(b) (emphasis added). Actions for contribution may be brought, as in this case, in a separate proceeding.
 
 
 13
 The law of contribution is intricate, but the basic principle is easy to state:
 
 
 14
 Typically, a right to contribution is recognized when two or more persons are liable to the same plaintiff for the same injury and one of the joint tortfeasors has paid more than his fair share of the common liability. Recognition of the right reflects the view that when two or more persons share responsibility for a wrong, it is inequitable to require one to pay the entire cost of reparation, and it is sound policy to deter all wrongdoers by reducing the likelihood that any will entirely escape liability.
 
 
 15
 Northwest Airlines, Inc. v. Transport Workers Union, 451 U.S. 77, 87-88, 101 S.Ct. 1571, 1578-79, 67 L.Ed.2d 750 (1981) (footnotes omitted).
 
 
 16
 The defendants argue that an action for contribution exists only when an individual has paid more than her "fair share" of the common liability. Since the court in Cousins found that the settlement represented the insureds "fair and proper share of the total damages sought against them in the action," the defendants contend that the present action was properly dismissed.
 
 
 17
 The problem with this argument is that it fails to recognize that the meaning of the term "fair share" depends upon the context in which it is used. The concept of fairness is inherently relational. There are three distinct relationships involved in the present case, each of which engenders a separate standard to assess the fairness of the Cousins settlement: (i) the relationship between individual Cousins defendants and the plaintiff class, (ii) the relationship between the Cousins defendants, "inter se," and (iii) the relationship between the Cousins defendants and joint tortfeasors who were not party to the suit.
 
 
 18
 Given that all tortfeasors are jointly and severally liable for the damages suffered by the plaintiff class, if only one of them were sued, it would be "fair" for that individual to be required to pay plaintiffs the full amount of the damages. The total sum of the damages would be that defendant's "fair share." When a number of joint tortfeasors are named as defendants, then the "fair share" of individual defendants is determined by their relative culpability. Smith v. Mulvaney, 827 F.2d at 561. "Relative" in this context is defined "inter se," in reference to the other defendants involved to the suit. The failure to join all culpable actors has the obvious effect of inflating the relative culpability of the parties who are joined.
 
 
 19
 In approving the settlement agreement, the court in Cousins had to make two assessments. First, the court had to determine whether the total amount of the settlement bore a reasonable relationship to the damage suffered by the plaintiff class, discounting for factors such as the cost and uncertainty involved in litigating the dispute. Second, the court had to determine whether the amount paid by each individual defendant was "fair" given their culpability relative to the other defendants involved in the litigation. It was in this context that the court determined that the settlement agreement represented the defendants' "fair and proper share of the total damages."
 
 
 20
 An action for contribution is concerned with the third type of fairness, that of the individual tortfeasor relative to all others jointly liable for the injury. If an individual pays more that her "fair share of the common liability," then an action for contribution will lie. Northwest Airlines, 451 U.S. at 88, 101 S.Ct. at 1579. It is axiomatic that a defendant may pay her fair share relative to other parties in the suit and yet pay more than her fair share relative to the universe of all joint tortfeasors.[1] If a party can establish these facts, then she has stated a cause of action upon which relief may be granted and can successfully avoid a 12(b)(6) motion.
 
 
 21
 The defendants argue that the "good faith" approval of the settlement agreement by the court in Cousins should bar the present action. They misread the reach of the good faith hearing.[2] In the area of securities litigation, this issue is governed by federal common law. See Kaypro, 884 F.2d at 1228.
 
 
 22
 Kaypro involved a partial settlement agreement containing an express bar against suits for contribution by nonsettling defendants against settling defendants in a section 10(b) securities fraud suit. The court upheld the bar and outlined a scheme that protected the interests of all parties while, at the same time, encouraging settlement.
 
 
 23
 This scheme contemplates a partial settlement approved by the district court under Rule 23. Nonsettling defendants are then barred from further rights of contribution from the settling defendants. At trial, the jury is asked not only to determine the total damage amount, but also the percentage of culpability of each of the non-settling defendants as well as that of the settling defendants. Nonsettling defendants as a whole will then be required to pay the percentage of the total amount for which they are responsible. The nonsettling defendants will be jointly and severally liable for that percentage, and will continue to have rights of contribution against one another.
 
 
 24
 884 F.2d at 1231 (footnote omitted).
 
 
 25
 While Kaypro goes far in clarifying the rights of settling and nonsettling defendants in the context of a partial settlement agreement, it provides little direct guidance as to the rights of settling defendants with respect to nonparties.[3] We hold that a settlement agreement cannot be relied upon to bar subsequent actions for contribution by settling defendants against individuals who were not party to the original suit. The logic of allowing defendants to enter into partial settlement agreements, paying damage awards that reflect their culpability relative to other parties in the suit and obtaining protection against subsequent claims for contribution by nonsettling defendants, does not bar claims by settling defendants against nonparties.
 
 
 26
 This holding promotes the three goals identified by the court in Kaypro. First, allowing suits against nonparties satisfies the "statutory goal of punishing each wrongdoer." 884 F.2d at 1231. To hold otherwise would immunize an entire category of joint tortfeasors from responsibility and thwart the deterrent objective of the laws regulating securities exchanges. Second, allowing suits against nonparties satisfies the "equitable goal of limiting liability to relative culpability." Id. Individuals are held accountable for that portion of the common liability for which they are culpable relative to the universe of all joint tortfeasors, and not simply relative to those individuals named by the plaintiff in the original action. Finally, allowing suits against nonparties satisfies the "policy goal of encouraging settlement." Id. Named defendants will be more likely to settle if they are not penalized for doing so by being prohibited from pursuing subsequent claims for contribution against nonparties.
 
 
 27
 The defendants argue that allowing suits against nonparties will prevent litigation from ever being quieted. There is an important difference between quieting existing litigation and barring legitimate and distinct causes of action. The settlement agreement brought to an end the dispute between the Cousins plaintiff class and the Cousins defendants. The settlement also quieted potential "inter se" claims between the Cousins defendants.
 
 
 28
 There is something inherently "dis-quieting" about contribution claims. These actions threaten to reopen many of the same issues raised in the original controversy. It is also undeniable that, from the standpoint of judicial economy, it is more desirable for all claims to be resolved in a single proceeding. These costs, however, were deemed acceptable in the context of securities law when Congress explicitly provided for contribution, 15 U.S.C. §§ 77k, 78i, and 78r, and implied a right of contribution in section 10(b), a right that can be pursued in a separate cause of action.
 
 
 29
 Our ruling will not cause an endless stream of contribution claims. The doctrine of contribution contains two important internal checks. No cause of action will lie unless a party has paid more than her share of the total amount of common liability, a sum that is not necessarily equivalent to the amount of the settlement agreement.[4] Second, a party becomes immune from any action for contribution once she has paid her share of the damages.
 
 
 30
 In the district court, the defendants argued a number of other rationales in support of the 12(b)(6) motion, arguments which have also been briefed on appeal. The district court did not base its decision on these grounds. Moreover, we find the arguments to be without merit. The claims of judicial and collateral estoppel relating to representations and findings that the Cousins settlement constituted the defendants "fair share" of the total damages are misguided for the same reason that an action of contribution exists: "fairness" in the Cousins context was limited to an "inter se" assessment.
 
 
 31
 Defendants claim that no action for contribution can exist because, given insureds position in Cousins, they cannot be joint tortfeasors. This argument fails to recognize that, in the present action, the Insurers contend that at least some of the insureds were wrongdoers. Moreover, the primary authority relied upon by the defendants, In re Agent Orange Product Liability Litigation, 818 F.2d 204, (2nd Cir.1987), is distinguishable. In that case the appellants maintained, in the action for contribution, that Agent Orange caused no harm. The court indicated that the situation would be different if the "appellants would abandon their 'no-fault' stance." Id. at 207.
 
 
 32
 Finally, the defendants assert that the doctrine of "superior equities" should bar the Insurers' claim for contribution. Our decision is guided by federal securities statutes and the federal common law. Kaypro, 884 F.2d at 1228. The defendants can cite no case supporting the existence of a doctrine of "superior equities" in this setting, nor do we find the reasoning persuasive enough to import the requirement. The long-standing bar against claims for indemnification in securities cases, see Laventhol, 637 F.2d at 676; Heizer Corp., 601 F.2d at 334, and the rule that damages in actions for contribution are determined by a standard of relative culpability, see Smith v. Mulvaney, 827 F.2d at 561, are sufficient to protect the equitable interests of the parties.
 
 
 33
 The plaintiffs have successfully stated a claim upon which relief may be granted. The 12(b)(6) motion should have been denied.
 
 
 34
 REVERSED AND REMANDED.
 
 
 
 [1]
 This is not to say that an action for contribution will always lie against non-party joint tortfeasors when named defendants negotiate a settlement agreement. The amount of damages in the settlement agreement is frequently discounted to reflect the cost and uncertainty associated with litigation. In determining whether or not an individual has paid more than her "fair share" for the purposes of contribution, the total amount of common liability is not discounted. If the discounting of the settlement amount is substantial, then a party to the settlement agreement may pay less than her "fair share" for purposes of contribution despite the fact that her relative culpability for purposes of the settlement agreement is inflated because all culpable parties were not joined
 
 
 [2]
 While in the context of federal maritime law and not securities law, Miller v. Christopher, 887 F.2d 902, 903-07 (9th Cir.1989) provides an extensive discussion of the general issues invoked by a good faith settlement bar to actions for contribution
 
 
 [3]
 Two other Ninth Circuit cases involve the effect of settlement on subsequent actions for contribution in securities cases. Neither case considers the effect of settlement on nonparties. After Kaypro, Laventhol, Krekstein, Horwath, & Horwath v. Horwitch, 637 F.2d 672, 675 (9th Cir.1980), cert. denied, Frank v. United States Trust Co., 452 U.S. 963, 101 S.Ct. 3114, 69 L.Ed.2d 975 (1981), should be read for the proposition that a settlement, not reflecting the settling defendants' proper share of the damages, will not bar subsequent actions for contribution by nonsettling defendants. Smith v. Mulvaney held that summary judgement in an action for contribution by a non-settling defendant against settling defendants was inappropriate if there exists a genuine issue of material fact as to whether the settling defendants paid their "proper share of damages." 887 F.2d at 562
 
 
 [4]
 Economic incentives continue to favor impleading a party in a third party action rather than seeking contribution in a separate suit. Besides the additional costs involved in a separate action, the impled party must pay her relative share of the total settlement amount, whereas damages in a separate suit are limited to the amount the settling defendants paid in excess of her share of the total amount of actual damages. The later sum will always be a smaller amount if the settlement amount is discounted in any fashion