TBG INC., Plaintiff,

v.

Richard A. BENDIS, Terrance Schreier, John G. Pappajohn, Robert H. Mann, Jr., Ernst & Whinney, Shook, Hardy & Bacon, Defendants.

Civ. A. No. 89–2423–EEO.

United States District Court,
D. Kansas.

Dec. 30, 1992.

J.D. Lysaught, Mustain, Higgins, Kolich, Lysaught & Tomasic, Kansas City, KS, Herbert E. Milstein, Lisa M. Mezzetti, Daniel S. Sommers, Cohen, Milstein, Hausfeld & Toll, Washington, DC, for TBG Inc., TBG Information Systems, Inc., George A. Bridgmon.

Bruce Keplinger, John Benge, Michael G. Norris, Michael B. Lowe, Payne & Jones, Chtd., Overland Park, KS, for Richard A. Bendis.

Karen J. Halbrook, John R. Cleary, Husch & Eppenberger, Kansas City, MO, for W. Terrance Schreier.

William G. Howard, Lathrop & Norquist, Overland Park, KS, William Ray Price, Jr., John H. Calvert, Lathrop & Norquist, Kansas City, MO, for John G. Pappajohn, Robert H. Mann, Jr.

Anthony F. Rupp, Shughart, Thomson & Kilroy, Overland Park, KS, John M. Kilroy, R. Lawrence Ward, Shughart, Thomson & Kilroy, P.C., Kansas City, MO, Emmett E. Eagan, Jr., Ernst & Young, Cleveland, OH, for Ernst & Whinney.

John J. Jurcyk, Jr., McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, Andrew C. Hartzell, Jr., John G. Koeltl, Lorna G. Schofield, Debevoise & Plimpton, New York City, for Shook, Hardy & Bacon.

J.D. Lysaught, Mustain, Higgins, Kolich, Lysaught & Tomasic, Kansas City, KS, Herbert E. Milstein, Lisa M. Mezzetti, Daniel S. Sommers, Cohen, Milstein, Hausfeld & Toll, Washington, DC, Martin E. Karlinsky, Scheffler, Karlinsky & Stein, New York City, for Richard S. Masinton, Continental Healthcare Systems, Inc.

Herbert E. Milstein, Lisa M. Mezzetti, Daniel S. Sommers, Cohen, Milstein, Hausfeld & Toll, Washington, DC, Martin E. Karlinsky, Scheffler, Karlinsky & Stein, New York City, for Continental Healthcare Systems, Inc.

Tim S. Haverty, M. Michael Gill, Tamara Wilson Setser, Julie A. Riggle, Hillix, Brewer, Hoffhaus, Whittaker & Wright, Kansas City, MO, Herbert E. Milstein, Lisa M. Mezzetti, Daniel S. Sommers, Cohen, Milstein, Hausfeld & Toll, Washington, DC, J.D. Lysaught, Mustain, Higgins, Kolich, Lysaught & Tomasic, Kansas City, KS, for Paul R. Billington.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

This matter is before the court on the joint motion of plaintiff TBG and defendants and third-party plaintiffs John G. Pappajohn and Robert H. Mann, Jr. for an order approving and implementing their proposed settlement agreement (Doc. # 679); the joint motion of plaintiff TBG and defendant Shook, Hardy, and Bacon for an order approving and implementing their proposed revised settlement agreement (Doc. # 756); and defendant Schreier's motion to certify a controlling question of law for interlocutory appeal (Doc. # 789). Having reviewed the motions and after a November 23, 1992, hearing on the settlement agreements, the court is now prepared to rule.

### The Settlement

### I. *Factual Background*

This action arises out of the June 10, 1986, acquisition of Continental Healthcare Systems, Inc. ("CHSI") by plaintiff TBG, Inc. ("TBG"). CHSI was a computer software company specializing in developing and marketing computer-based information systems for hospitals and other health care providers. TBG's claims against all defendants stem from alleged material misrepresentations about the value of CHSI.[1] TBG claims that it reasonably relied on alleged misrepresentations and omissions about matters central to TBG's purchasing decision—the status of completion of CHSI's products, the terms of CHSI's existing sales contracts with customers, improper revenue recognition by CHSI, and the status of employment of certain CHSI officers (Richard Masinton, Chief Executive Officer, and Paul Billington, Controller) who had threatened to resign. TBG seeks $46,000,000 in actual and punitive damages.

Specifically, TBG claims that defendants Robert Mann and John Pappajohn, formerly outside directors of CHSI and members of CHSI's Audit Committee, are liable for

---

1. Plaintiff's claims are based on § 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b) ] and Rule 10b–5 promulgated thereunder [17 C.F.R. § 240.10b–5], section 20(a) of the Securities Exchange Act of 1934 [15 U.S.C. § 78t(a) ] and, in addition, various pendent state law claims.

federal securities laws violations, state common law fraud, and negligent misrepresentation. TBG alleges that Mann and Pappajohn, as Directors of CHSI and members of the Audit Committee, are liable because they made or aided others in making misrepresentations and omissions of material fact in connection with TBG's acquisition of CHSI.[2] Although Mann and Pappajohn deny liability, they have reached a settlement with TBG ("the Mann/Pappajohn settlement").

TBG has also asserted claims against defendant Shook, Hardy and Bacon ("Shook"), CHSI's outside counsel for the sale. Shook issued an "Opinion Letter" and advised CHSI officers in conjunction with the sale. TBG alleges that Shook is liable for federal securities violations, negligence, common law fraud, and negligent misrepresentation because Shook learned of facts during the due diligence investigation of CHSI by TBG which made the following documents materially false and misleading: 1) CHSI's financial statements; 2) CHSI's financial projections; 3) the merger proxy; and 4) oral and written representations by other defendants. TBG alleges that Shook had a duty to disclose this information and to investigate these matters to ensure that they were brought to the attention of independent members of CHSI's board of directors. TBG contends that, knowing these facts, Shook should not have participated in the closing of the transaction without insuring disclosure of the information. Further, TBG alleges that Shook is liable because Shook's opinion letter was false and misleading in that it failed to disclose this material information. Although Shook denies liability, Shook and TBG have also reached a settlement ("the Shook settlement").

If both settlements are approved, the following nonsettling defendants will re-

main: Richard Bendis (former Chairman of the Board, President, and Chief Executive Officer of CHSI); W. Terrance Schreier (former Executive Vice President, Chief Operating Officer, and director of CHSI); and Ernest and Whinney ("E & W"), outside accounting firm for CHSI prior to and during the sale. TBG alleges that Bendis and Schreier are liable for federal securities violations and state law breach of contract and indemnity, fraud and negligent misrepresentation because they signed representations, warranties and covenants to TBG concerning the business, operations and status of CHSI and the truthfulness of the merger documents and other documents provided to TBG.

TBG alleges that E & W, as independent auditor of CHSI's financial statements, is liable for federal securities violations, negligence, common law fraud and negligent misrepresentation. TBG contends that E & W was aware of questionable transactions and the questionable status of products on which revenue was recognized and that despite this knowledge, E & W assisted CHSI in generating both the 1985 Form 10–K and the March 1986 Form 10–Q which were materially misleading. TBG also alleges that E & W is liable in connection with the Comfort Letter they issued as a part of the CHSI acquisition because the letter assured TBG that CHSI's financial statements accurately reflected CHSI's financial status.

Both settlement agreements, however, are subject to several contingencies. First, all the parties to the settlement agree to release each other from all claims, present and future, arising out of this transaction.[3] All settling defendants also agree to dismiss with prejudice any and all claims against any other party in this action.[4] Second, the court must enter an order bar-

---

**2.** These alleged misrepresentations occurred during TBG's due diligence period and in CHSI's financial filings with the SEC (the 1985 Form 10–K and the first quarter 1986 10–Q) immediately before the acquisition.

**3.** Thus, TBG and Mann and Pappajohn agree to dismiss with prejudice all claims against each other as do Shook and TBG.

**4.** Thus, Mann and Pappajohn relinquish their claims against Shook for negligence and contribution and their claims against CHSI and TBGIS (the new CHSI) for indemnification and advancement of payment of their attorneys' fees.

ring all present and future claims against the settling defendants (whether for contribution, indemnity, or otherwise) by any party arising out of the CHSI sale (the "bar order"). Third, the bar order must implement the *pro tanto* method of judgment reduction consistent with the "one satisfaction of judgment" rule and limit any future setoff of damages by the nonsettling defendants to the amount of the settlement.·

## II. *Discussion*

■ Ordinarily, settlement agreements need not be approved by the court. *See In re Masters Mates & Pilots Pension Plan and IRAP Litigation*, 957 F.2d 1020, 1025 (2d Cir.1992) ("Typically, settlement rests solely in the discretion of the parties, and the judicial system plays no role."). However, where a settlement agreement requires a bar order which affects the right of parties to the litigation who are not also parties to the settlement, the court must determine whether the settlement agreement is fair to those affected nonsettling parties. *See id.* at 1026; *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir.1983); *Donovan v. Robbins*, 752 F.2d 1170, 1176 (7th Cir.1985). In considering the fairness of the proposed settlement agreements, the court may consider the following factors: 1) relative fault; 2) likelihood that plaintiff will prevail at trial; 3) the adequacy of resources of the most culpable party; and 4) the adequacy of resources of the settling parties. *In re Masters Mates*, 957 F.2d 1020, 1031 (2d Cir.1992).

### A. The Bar Order

### 1. The Implied Right to Contribution

Before we can consider the propriety of the proposed bar order in this case, we must first consider whether the nonsettling defendants have claims for contribution, indemnity or otherwise that will be imped-ed by entry of such an order. Clearly, defendants have no implied right to indemnification under section 10(b) or rule 10b–5. *See King v. Gibbs*, 876 F.2d 1275, 1281 (7th Cir.1989); *Globus v. Law Research Serv., Inc.*, 418 F.2d 1276, 1288 (2d Cir.1969), *cert. denied*, 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970).

·■ Regarding contribution, the Tenth Circuit has indicated that an implied right to contribution exists under Section 10(b) of the 1934 Securities Act ("§ 10(b)") and Rule 10b–5 of the Securities Exchange Commission ("rule 10b–5").[5] In addition, the majority of jurisdictions have recognized an implied right to contribution in 10(b) litigation. *See, e.g., Employers Ins. of Wausau v. Musick, Peeler & Garrett*, 954 F.2d 575, 577, 580 (9th Cir.1992) *cert. granted*, —— U.S. ——, 113 S.Ct. 54, 121 L.Ed.2d 23 (1992); *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1228–29 (9th Cir. 1989); *Heizer Corp. v. Ross*, 601 F.2d 330, 332 (7th Cir.1979) (for citations to additional authority); *In re Nucorp Energy Securities Litigation*, 661 F.Supp. 1403, 1406 (S.D.Cal.1987) (assuming but not holding that there exists a federal right to contribution); *Alvarado Partners, L.P. v. Mehta*, 723 F.Supp. 540, 551 (D.Colo.1989); *In re Sunrise Securities Litigation*, 698 F.Supp. 1256, 1258 (E.D.Pa.1988); *Nelson v. Bennett*, 662 F.Supp. 1324, 1336–37 (E.D.Cal. 1987).

The primary justification for the uniform federal approach is that a right to contribution is implied under federal securities laws just as private causes of action are implied under §§ 10(b) and 14(a) and under rule 10b–5. *See Heizer*, 601 F.2d at 331–32. The right to contribution is a key federal substantive right and applying state law could "thwart the overall federal regulatory scheme" and lead to forum shopping and conflict of laws litigation due to variances

5. *See deHaas v. Empire Petroleum Co.*, 286 F.Supp. 809, 815–16 (D.Colo.1968), *rev'd in part on other grounds*, 435 F.2d 1223, 1232 (10th Cir.1970) (holding that a right to contribution exists in securities litigation). The Tenth Circuit reversed the holding that punitive damages are available under 10b and affirmed the decision "in all other respects" thus indicating that it approved the district court's holding regarding contribution. *deHaas*, 435 F.2d at 1232. *See also First Golden Bancorporation v. Weiszmann*, 942 F.2d 726, 732 (10th Cir.1991) (citing *deHaas* with approval).

in state contribution laws. *In re Sunrise*, 698 F.Supp. at 1258 (quoting *Nelson*, 662 F.Supp. at 35).

Although not all courts have followed this approach,[6] we tend to agree with the majority that an implied right to contribution exists under § 10(b) and rule 10b–5.[7] However, we need not reach this question because even if we are in error, it will not affect the propriety of our decision to approve the settlement. Our error would mean that the nonsettling defendants have no right to contribution and thus even less grounds, if any, to object to the settlement. Out of an abundance of caution, we will assume that an implied right to contribution exists and proceed from that premise.

■■■ There are also pendent state law claims at issue. Under Kansas law, nonsettling defendants do not have any right to contribution or indemnity in this case.[8] Thus, as to the state law claims, a bar order will not unfairly extinguish any rights of the nonsettling defendants.

■■■ We also find Bendis' claim that the bar order in the Shook settlement is overbroad without merit. Bendis contends that the bar order unfairly bars his potential state law negligence action against Shook. Bendis alleges but does not offer evidence that he was represented in his personal capacity by Shook. He also urges that he may have an independent claim for malpractice against Shook if it later comes to light that the documents prepared by Shook failed to protect him from liability to TBG in this litigation. We cannot agree. We note that "a settlement bar should not be approved unless it is narrowly tailored and preceded by a judicial determination that the settlement has been entered into in good faith and that no one has been set apart for unfair treatment." *In re Masters Mates*, 957 F.2d at 1031. However, as the courts in *In re U.S. Oil & Gas Litigation*, 967 F.2d 489, 496 (11th Cir.1992), and *South Carolina National Bank v. Stone*, 749 F.Supp. 1419, 1433 (D.S.C.1990), stated, "a rose by any other name is still a rose.... [defendant's] fraud and negligence claims are nothing more than claims for contribution or indemnification with a slight change of wording." Similarly, in the present case any potential negligence claim against Shook is, in essence, a claim for contribution—Bendis would be seeking damages resulting from his liability to TBG, not damages arising separately. *Compare Biben*, 1991 WL 272848, at *5–6 (the claims at issue were independent of plaintiff's claims against defendant); *First Golden Bancorporation*, 942 F.2d at 731 (distinguishing "liability over" claims from those for independent affirmative relief). Thus, the bar order here is not overly broad and will not be denied for that reason.

**6.** Some courts refuse to recognize a right to contribution under § 10(b) and rule 10b–5. They reason that a uniform federal rule could result in different treatment between federal and pendent state claims within the same case because state claims are clearly governed by the state contribution laws. More importantly, these courts argue, Congress did not expressly provide for a right to contribution in § 10(b). Relying on *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) (antitrust), and *Northwest Airlines, Inc. v. Transport Workers Union of America AFL–CIO*, 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981) (Equal Pay Act and Title VII), these cases hold that the courts should not create a right to contribution if Congress failed to do so. *See, e.g., Biben v. Card*, No. 84–0844–CV–W–6, 1991 WL 272848, at *6 (W.D.Mo. Dec. 10, 1991); *Chutich v. Green Tree Acceptance, Inc.*, 759 F.Supp. 1403, 1407 (D.Minn.1991); *In re Professional Financial Management, Ltd.*, 683 F.Supp. 1283, 1286 (D.Minn.1988). We find *Texas Indus.* and *Northwest Airlines* distinguishable. Unlike the antitrust and equal pay laws at issue there, the federal securities regulatory scheme does contain references to a right of contribution. *See, e.g.,* § 11 of the Securities Act of 1933 [15 U.S.C. § 77k(f)].

**7.** We note that the Supreme Court has granted certiorari to decide this very issue. *Employers Ins. of Wausau*, 954 F.2d 575 (9th Cir.), *cert. granted,* —— U.S. ——, 113 S.Ct. 54, 121 L.Ed.2d 23 (1992).

**8.** Kansas does not recognize a right to contribution among joint tortfeasors on claims accruing after July 1, 1987, due to the enactment of comparative fault, K.S.A. § 60–258a (1983 & Supp.1991). *See Comeau v. Rupp*, 762 F.Supp. 1434, 1438–39 (D.Kan.1991). Under Kansas law prior to comparative fault, only joint judgment debtors may maintain an action for indemnification or contribution. *See id.*

■ Even assuming that contribution or indemnity were available, a bar order is usually an appropriate vehicle to extinguish it.[9] "Contribution bar orders are frequently upheld when they are sought by a settling defendant against a nonsettling defendant in the same case." *FDIC v. Geldermann*, 975 F.2d 695, 698 (10th Cir.1992) (citing *In re Masters Mates*, 957 F.2d at 1031–32 (ERISA action)); *In re Jiffy Lube Securities Litigation*, 927 F.2d 155, 160 (4th Cir.1991) (securities litigation); *Kaypro*, 884 F.2d at 1229 (securities litigation). As the court recognized in *In re Nucorp*, 661 F.Supp. at 1408, "Anyone foolish enough to settle without barring contribution is courting disaster. They are allowing the total damages from which their ultimate share will be derived to be determined in a trial where they are not even represented." Federal Courts have consistently imposed orders barring contribution in multi-defendant securities cases because they promote settlement. *See, e.g., Kaypro*, 884 F.2d at 1225, 1229; *Alvarado*, 723 F.Supp. at 550–51; *In re Sunrise*, 698 F.Supp. at 1257; *Nelson*, 662 F.Supp. at 1329; *In re Nucorp*, 661 F.Supp. at 1408. We therefore decline to hold that the bar orders presented in conjunction with these settlements are per se prohibited.

## 2. The Judgment Reduction Method

■ The real issue before us is whether the proposed settlement is unfair because it mandates a bar order in conjunction with the *pro tanto* judgment reduction method. Essentially, two methods of judgment reduction are advocated here—the *pro tanto* method and the proportionate method.[10] Under the *pro tanto* method, as proposed in the settlement agreement, the nonsettling defendants are entitled to set off, against any eventual judgment, an

amount equal to the settlement amount. *See Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir.1989). By contrast, the proportionate method, as recommended by the opponents to the settlement, allows the nonsettling defendants to set off an amount equal to the proportion of fault allocated to the settling defendants. The nonsettling defendants' liability is limited to their proportionate fault. *See Kaypro*, 884 F.2d at 1231.

### a. The Pro Tanto Method—

The *pro tanto* method allocates the risk of an insufficient settlement to the nonsettling defendants who are not parties to the settlement agreement. *See FDIC v. Geldermann, Inc.*, 763 F.Supp. 524, 529–30 (W.D.Okl.1990), *rev'd on other grounds*, 975 F.2d 695 (10th Cir.1992). Therein lies the real dilemma in our approving this settlement. The bar on all future claims (including claims for contribution) by the nonsettling defendants against the settling defendants, combined with joint and several liability and the use of the *pro tanto* method of judgment reduction, place nonsettling defendants in the position of potentially being forced to pay more than their fair share of damages without recourse via an action for contribution to recover their overpayment. In states where contribution is available, a party forced to pay more than that party's culpable share of damages may typically maintain an action for contribution against a joint tortfeasor to recover the difference between what the party paid and the portion of the damages for which that party was culpable. *See Alvarado*, 723 F.Supp. at 549. However, the bar order eliminates this right to contribution.

Assume *arguendo* the following scenario. The settlement is approved and settling

9. A bar order is appropriate unless a state law claim provides a remedy beyond that available under federal law and also mandates contribution in conjunction with that claim. *See Alvarado*, 723 F.Supp. at 554. In the unlikely event that this is the case, we may always decline to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(1).

10. Bendis advances a third hybrid "capped" method wherein the setoff is the greater of the actual settlement amount or the settling defendants' relative fault. No court since *First Federal Savings & Loan Assoc. v. Oppenheim, Appel, Dixon & Co.*, 631 F.Supp. 1029 (S.D.N.Y.1986) (applying New York state law), has utilized this method. It is inferior to both of the other methods. *See Biben v. Card*, 1991 WL 272848, at *4–5. Accordingly, we reject this method.

defendants pay $10,000,000 [11] in settlement. The case proceeds to trial, a nonsettling defendant loses and is found ten percent (10%) at fault while a settling defendant is found ninety percent (90%) at fault. The jury awards $40,000,000 in damages and the nonsettling defendant is required to pay $30,000,000 (the entire $40,000,000 less the $10,000,000 *pro tanto* offset) despite only being found at fault for $4,000,000. The rub is that, under the proposed bar order, the nonsettling defendant would not then be able to recover any of the $26,000,000 in damages paid in excess of fault from the settling defendant who was assessed actual culpability.

While it is true that there is a risk that the nonsettling defendants will have to pay more than their proportionate share of the damages, it is also true that they could benefit by paying less than their proportionate share. If the settlement amount is greater than the proportionate fault of the settling defendants, then the nonsettling defendants still receive full credit for the entire settlement amount. *See Sears v. Atchison, Topeka & Santa Fe Ry.*, 749 F.2d 1451, 1455 (10th Cir.1984) (a settlement for more than the settling defendant's proportionate fault benefits the nonsettling defendant because the latter need pay only the remaining amount necessary to make the victims whole).

#### b. *The Proportionate Method—*

By contrast, the proportionate method allocates the risk of an insufficient settlement to the plaintiff who is a party to the settlement. *See Geldermann,* 763 F.Supp. at 529–30. Under the proportionate method, nonsettling defendants pay only that portion of the total judgment representing their relative portion of fault. *See id.* at 530; *Kaypro,* 884 F.2d at 1222. The plaintiff bears the risk if this amount, when combined with the settlement amount, is

less than 100% of the total damages assessed because both settling and nonsettling defendants have each satisfied their respective liability to the plaintiff. *See Geldermann,* 763 F.Supp. at 529–30. Thus, any deficiency between total damages assessed at trial and money actually received falls on the plaintiff.

We reach a very different outcome in our hypothetical scenario using the proportionate method. Under the proportionate method, the jury must assess fault to all defendants—settling defendants (who were not represented at trial), as well as nonsettling defendants (who were represented at trial). Thus, plaintiff receives only $14,000,000—the $10,000,000 in settlement plus the $4,000,000 in damages attributable to the nonsettling defendants who were assessed 10% fault on a $40,000,000 damages award. The fallout: plaintiff cannot collect the $26,000,000 shortfall.

Although we are without a clear directive as to the preferred judgment reduction method,[12] we believe that the Tenth Circuit would adopt the *pro tanto* approach. In *Hess Oil Virgin Islands Corp. v. UOP, Inc.*, 861 F.2d 1197 (10th Cir.1988), Chief Judge Holloway cited *Jackson v. Barton Malow Co.*, 131 Mich.App. 719, 346 N.W.2d 591, 592–93 (1984), in support of the proposition that "by not settling, the nonsettling tortfeasor runs the risk of increasing the amount he will have to pay." [13] *Hess,* 861 F.2d at 1209. He concluded, "[w]e agree with the reasoning that the plaintiff should not be penalized for settling." *Id.; see also Lynn v. Southwestern Elec. Power Co.*, 453 F.Supp. 599, 603 (E.D.Texas 1978). District Judge Thompson in *Geldermann* similarly stated, "the risk should more rightfully be allocated to joint-tortfeasors." 763 F.Supp. at 530. Although the context is different here, the rationale is equally applicable.

---

**11.** This figure is purely hypothetical; some of the actual settlement figures were filed under seal at the parties' request.

**12.** *See Geldermann,* 975 F.2d at 700 ("At this time, we express no opinion as to whether the 'pro tanto rule' is the appropriate legal standard for calculating the setoff for related settlements

under the circumstances presented by this case.").

**13.** Chief Judge Holloway was considering whether to apply credit for a prior settlement by a joint tortfeasor before or after deduction for the plaintiff's contributory negligence.

Even without Judge Holloway's comment in *Hess*, we have concluded the *pro tanto* method is the most sound approach and should be utilized in this case. The *pro tanto* method is preferred because: 1) it promotes settlement;[14] 2) it is easier to apply; and 3) it adheres to the one satisfaction of judgment rule. *See Geldermann*, 763 F.Supp. at 528–32.

The *pro tanto* method eliminates several difficulties presented by the proportionate method. First and foremost, the proportionate method creates an environment of uncertainty that is hostile to settlement.[15] *Id.* at 530. A settling plaintiff faces two critical uncertainties: 1) the amount of damage that will ultimately be awarded; and 2) the relative degree of fault that will be assessed against the settling defendants. *See id.* Under the proportionate method, a plaintiff will rarely entertain cost of defense settlements, such as the one presented here by Mann and Pappajohn, because settlement with one defendant could leave plaintiff unable to collect the balance of the total assessed damages from the codefendants under joint and several liability. *See Geldermann*, 763 F.Supp. at 529–30.[16]

In addition, plaintiff must prosecute the case in the shadow of a phantom defendant who is unrepresented but assessed fault. That fault assessment is of consequence— it inures to the detriment of the plaintiff where the fault assessed is in excess of the settlement amount because plaintiff is limited to recovery on fault assessed to the nonsettling defendants. The problems inherent in such a process are obvious. As the court in *In re Atlantic Financial Management Securities Litigation*, 718 F.Supp. 1012, 1018 (D.Mass.1988), recognized, "in complex securities litigation, the burden on the jury's time and perception is already considerable. To add to this burden the task of apportioning fault between absent and present defendants would obviate much of the advantage of partial settlement."

Even the court in *Kaypro* recognized that fingerpointing is inevitable under the proportionate method. *See Kaypro*, 884 F.2d at 1231 (approving proportionate). The *Kaypro* court reasoned that fingerpointing was acceptable because the settling defendants at whom the finger would point were protected by the bar order and "the financial motives of both plaintiffs and nonsettling defendants to vigorously press their arguments at trial [are] unchanged." *Id.* We disagree. Although the financial motives of both plaintiff and nonsettling defendants remain unchanged, the posture of the case changes dramatically when the jury is asked to assess fault to an unrepresented party. Suddenly, plaintiff is in the awkward position of "defending" the actions of the unrepresented settling parties as against the nonsettling defendants. Although under the *pro tanto* method the settling defendants are not excluded from mention at trial or from being called as witnesses, the jury is not called upon to allocate fault to the unrepresented defendants.

Second, the proportionate method may violate the one satisfaction of judgment rule announced in *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1236 (10th Cir.1988). *See Geldermann*, 763 F.Supp. at 531; *Singer*, 878 F.2d at 600. Under the proportionate method, the plaintiff could obtain a double recovery. Assume that settling defendants settle for

---

14. Strong federal policy supports settlement of complicated multiparty litigation. *See e.g., Kaypro*, 884 F.2d at 1225; *Biben*, 1991 WL 272848 at *2; *Alvarado*, 723 F.Supp. at 550–52; *In re Nucorp*, 661 F.Supp. at 1408.

15. Indeed, this settlement is void ab initio unless the agreement is approved and implemented as presented.

16. For example, if plaintiff settles with an impecunious defendant for $50,000, the settling party

is assessed 10% fault and the nonsettling defendants are assessed 90% fault on a total damage award of $40,000,000, plaintiff will only collect $36,050,000 total—$36,000,000 (90% of 40,000,-000) plus $50,000 in settlement. Under joint and several liability, if plaintiff declines settlement and proceeds to trial against all defendants, plaintiff would be entitled to the entire $40,000,000 from the defendant able to pay. It is then the codefendant's problem to collect from the impecunious codefendant under a claim for contribution.

$10,000,000 and the jury assesses 100% fault to the nonsettling defendants for damages of $15,000,000. Plaintiff recovers $15,000,000 from the nonsettling defendants for a total recovery of $25,000,000, which is $10,000,000 greater than the jury's determination of total damages sustained by plaintiff. Under the *pro tanto* rule, however, the one satisfaction of judgment rule is upheld because the settlement is set off from the total amount, resulting in a total recovery of $15,000,000. Thus, the combined amounts paid by settlors and nonsettlors can never exceed the total amount of plaintiff's damages. *See Geldermann*, 763 F.Supp. at 531.

One criticism of the *pro tanto* method is that it encourages collusion in that the plaintiff may settle with a favored defendant (or one with limited resources) and still obtain the balance of a full recovery from the nonsettling joint tortfeasors. *See Kaypro*, 884 F.2d at 1230, *In re Sunrise*, 698 F.Supp. at 1259. We may allay this fear by making a judicial determination that no collusion occurred here. Further, the proportional method could encourage collusion as well. The nonsettling defendants could collude together against the plaintiff by agreeing to place all the blame on the settling defendants thereby reducing the plaintiff's judgment. *See Biben*, 1991 WL 272848, at *4; *MFS Municipal Income Trust v. American Medical Int'l, Inc.*, 751 F.Supp. 279, 284 (D.Mass.1990). We conclude that the *pro tanto* method is the preferable judgment reduction method in this case.

### B. The Fairness of the Settlement

Having determined that the *pro tanto* method is the best approach, we are left to determine whether the settlement is unfair to the nonsettling defendants in the instant case. Among the factors we may consider

are: 1) whether the settlement was negotiated in good faith and at arm's length; 2) the status of discovery and other proceedings; 3) the effect the settlement would have on the litigation and trial; 4) the participation of a magistrate or judge in the settlement; 5) the ability of the settling defendant to pay more; and most importantly, 6) the weakness of the claims against the settling defendants both absolutely and relative to the other defendants. *See In re Jiffy Lube*, 772 F.Supp. 890, 892–93 (D.Md.1991); *MFS Municipal*, 751 F.Supp. at 287–89. The court has reviewed the voluminous evidentiary materials submitted by all of the parties on the issue of fairness in lieu of a separate hearing.[17] Applying the above factors to the evidence submitted, we find that the settlement is not unfair.

First, the court finds that the settlement is the result of good faith, arm's-length negotiation. No party seriously contends or presents evidence that any collusion was involved in either of the settlements before this court. By all accounts, the negotiations for both settlements were lengthy and hard fought. All parties to the settlement were ably represented by competent counsel. This court is cautioned not to substitute our own business judgment for that of counsel. *See Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D.Colo.1974) (class action settlement). We conclude that the settlements were reached in good faith and that no collusion was involved. We note that there was no magistrate or judge involved in the settlement negotiations. This, however, is not required where extensive, good faith arm's-length negotiation obviates the need for judicial supervision. *See MFS Municipal*, 751 F.Supp. at 287–88.

Second, the court finds that both settlements occurred after significant discovery was complete.[18] Fact discovery was com-

---

**17.** We recognize that some of the nonsettling defendants object to the *pro tanto* method because they urge that it requires an evidentiary hearing that will resemble a "mini trial." We disagree. All parties have submitted extensive evidentiary materials. In light of those submissions, we do not deem an additional evidentiary hearing necessary to determine the fairness of the settlement.

**18.** According to Shook, approximately 73 fact depositions were taken in which 1300 exhibits were marked. In addition, by the time the Shook settlement was reached, 14 experts had been deposed and an additional 600 exhibits had been marked.

plete when the Mann/Pappajohn settlement was negotiated. Fact discovery and significant expert discovery were complete by the time the Shook settlement was reached. Clearly, all settling parties had substantial information about the case from which to evaluate their respective positions and potential liabilities when they negotiated the settlements.

Third, the settlements will greatly simplify the trial of this matter. E & W contends that the settlements will not significantly simplify matters because the settling parties may still be called as witnesses and their liability will still be an issue at trial.[19] We disagree. Neither Mann, Pappajohn, or Shook will be represented at trial—they will not present opening or closing statements or question witnesses. Also, the plaintiff will not present evidence to establish each element of liability on the numerous counts charged against each.[20] In short, settlement will save substantial time and jury confusion at trial.

As to both settlements, we note that the only claims for contribution presently pending in this litigation are those filed by settling defendants Mann and Pappajohn. In addition, it is possible that the objecting defendants have no right to contribution at all. *See Employers Ins. of Wausau,* 954 F.2d at 577, 580, *cert. granted,* —— U.S. ——, 113 S.Ct. 54, 121 L.Ed.2d 23 (1992). In short, the main objection to the settlement—that the objector's right to contribution is being eliminated without adequately compensating the nonsettling defendants by implementing the proportional judgment reduction method—is too tenuous to require us to disapprove the settlement.

The Shook settlement is fair in light of the substantial settlement amount and the uncertainties surrounding Shook's liability due to the merits of Shook's defenses. We find that Shook offers some very persuasive and well documented arguments in

support of the assertion that TBG faces a substantial burden at trial to establish Shook's liability. Shook not only asserts the standard defenses offered by all the defendants (i.e. absence of reliance by TBG, absence of scienter by Shook, absence of negligence by Shook and lack of provable damages), but also special defenses in that they were under a duty to CHSI as their client and not to TBG as their client's adversary. *See, e.g., CCDC Holdings, Ltd. v. Smith,* No. 86-4365-0, 1988 WL 384417, 1988 U.S. Dist. LEXIS 1215-4 at *19-27 (D.Kan. October 5, 1988) (applying California law); *Bank IV Wichita v. Arn, Mullins, Unruh, Kuhn & Wilson,* 250 Kan. 490, 827 P.2d 758, 766-69 (1992) (duty owed to client and not to nonclient third party).

With regard to the opinion letter, the court finds that Shook raises substantial questions about whether TBG may be found to have relied upon that letter and whether the letter was actually misleading. Any liability associated with the letter would be comparable to that associated with E & W's comfort letter and less likely to result in liability than the guarantees given by Bendis and Schreier. Thus, relative culpability does not mandate denial of the settlement as unfair.

The objectors argue that the Shook settlement is unfair because Shook is able to pay more than is offered in settlement and as a percentage of the total damages sought, the settlement is inadequate to fairly represent Shook's potential liability.

First of all, the settlement is not unfair simply because Shook is able to pay more. *See MFS Municipal,* 751 F.Supp. at 287-88. Second, the settlement is not unfair simply because plaintiff seeks damages significantly in excess of the settlement. Few settlements would transpire if they were required to approach claimed damages. As we expressed in *Seiffer v. Topsy's Intern., Inc.,* 70 F.R.D. 622, 630 (D.Kan.1976) (class

---

**19.** We note that the objectors' proposed proportional method compounds, rather than simplifies, the problem by requiring the jury to assess fault to the nonrepresented settling parties.

**20.** We note that although the liability of the settling defendants may still be discussed at trial

by the nonsettling defendants, any fault assessment to the settling defendants is not of consequence because, under joint and several liability, the nonsettling defendants will ultimately bear responsibility for 100% of assessed damages in excess of the settlement amount.

action settlement), "Even assuming arguendo that the recovery here would far exceed that achieved through settlement, we regard that fact alone as insufficient in law to disapprove the agreement to settle." *See also In re Masters Mates*, 957 F.2d at 1031 ("a partial settlement providing little relief may be entirely satisfactory if the settling defendant has strong defenses or is impecunious"). A settlement is a compromise designed to approximate what each party views as either potential liabilities or potential gains from continuing on in the litigation. Many factors enter into that evaluation; most obviously, the potential risks of not prevailing and the additional expenses involved in persevering. We find that the amount of the Shook settlement is substantial, both in relative and absolute terms. We are unprepared to say that the settlement is unfair simply because the amount is a relatively small percentage of some remote potential liability that might befall Shook under a worst case scenario.

In addition, there is evidence that TBG's claimed damages are inflated. TBG seeks to recover the entire purchase price of approximately $31,000,000 plus $10,000,000 in loans to CHSI. The entire purchase price is not the proper measure of damage unless CHSI is worthless. Defendants contend that TBGIS (the new CHSI) is still in operation as one of the leading companies in the health information systems industry and that Pharmakon 2000 is a leading computer software product in the healthcare industry. If this is true, TBG is not likely to recover the entire purchase price as actual damages.

There is also evidence that TBG was aware that the CHSI acquisition was a risky investment and that TBG was paying between $10,000,000 and $15,000,000 too much for CHSI. Yet, TBG proceeded with the acquisition anyway. Defendants contend that TBG cannot prove reliance as to

this amount and thus is not entitled to damages.

Finally, there is evidence that TBG's claimed damages may be reduced by the $10,000,000 in tax savings generated from the tax loss taken as a result of the CHSI acquisition. In light of these hurdles which TBG must overcome to recover the full $40,000,000, the substantial amount represented by the Shook settlement is reasonable.

We also find that the Mann/Pappajohn settlement is fair in light of the relatively weak financial position of these defendants. Clearly, defendant Mann is unable to pay even the settlement amount offered here [21]—Pappajohn will reportedly carry the entire burden of payment of this settlement. There is little reason to think that additional litigation against Mann and Pappajohn, depleting Pappajohn's somewhat limited resources,[22] will inure to the actual benefit of anyone except the attorneys in this case.

The Mann/Pappajohn settlement is a cost of defense settlement which is rooted more in considerations of finances than relative fault. Relative fault does not provide justification for disapproval of the settlement. The claims against Mann and Pappajohn are subject to numerous contingencies. The claims stem basically from the financial statements used in the transaction. TBG claims that certain accounts receivable should not have been booked because: 1) the software sold was not "substantially complete" and 2) the contracts contained terms which impacted negatively on their revenue generating capacity. For purposes of considering this settlement, the court finds that Mann and Pappajohn, as members of the Audit Committee, held a certain degree of responsibility for matters contained in CHSI's financial statements. However, the court also finds that E & W, as CHSI's accountant, shared in that responsibility and evidence of the element of scienter by Mann and Pappajohn is sketchy

---

21. Mann has submitted an affidavit revealing a negative net worth and substantial liabilities.

22. Neither Mann nor Pappajohn are independently insured against these claims. Pappajohn

does submit that he is able to respond to a "claim for contribution based on relative fault within any reasonable range of liability."

at best. Thus, we do not find that the Mann/Pappajohn settlement is unfair based on considerations of relative culpability. With discovery substantially complete, the settlement represents the parties' reasoned valuation of their respective claims. The settlement, reached after arm's-length negotiation, is the best available measure of liability. *See Biben,* 1991 WL 272848, at *1-2 (class action portion of decision).

In addition, we cannot say, as the objectors urge, that the settlement is unfair simply because it represents less than the amounts received by the defendants in the CHSI sale.[23] The settlement must be evaluated in terms of the parties' present position with regard to liability and ability to pay, not past events which have little or no effect on the present litigation.

Finally, the court finds that the $600,000 advancement for prelitigation expenses should not be included in the setoff amount. The parties do not cite and the court has found no authority in support of such a contention. E & W reasons that this amount represents a benefit to TBG in that the defendants' claims for advancement against TBGIS will be released pursuant to the settlement agreement. We disagree. The $600,000 is too attenuated to reflect a tangible benefit to TBG capable of supporting the conclusion that it must be included in the set off. The claims have not been reduced to an executable judgment. Plaintiff strongly disagrees with our prior order granting Mann and Pappajohn advancement of the litigation expenses and promises that an appeal will ensue. Contrary to our decision, the courts in *Advanced Mining Systems, Inc. v. Fricke,* No. 11823, 1992 WL 187615 (Del. Ch. Aug. 4, 1992), and *Heffernan v. Pacific Dunlop GNB Corp.,* No. 91-C-2494, 1992 WL 275573 (E.D.Ill. Oct. 1, 1992), held that indemnification and advancement are separate and distinct rights. *See also Citadel Holding Corp. v. Roven,* 603 A.2d 818 (Del. 1992) (advancement and indemnification are treated as separate concepts). If those courts are correct, then Mann and Pappa-

john may not be entitled to any advancement at all. Thus, the $600,000 need not be included in the setoff amount.

### § 1292 Interlocutory Appeal

■ Defendant Schreier moves for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Certification is unnecessary because our order will be appealable under Fed.R.Civ.P. 54(b) or 28 U.S.C. § 1292(a)(1). In *Geldermann,* 975 F.2d at 697, the court held that an appeal under 54(b) is proper where the bar order addresses a claim for relief and an immediate entry of judgment is directed. In this case, the bar order will dismiss with prejudice all claims for relief against Shook, Mann and Pappajohn as well as claims by Mann and Pappajohn against Shook. Our order will expressly find no just reason for delay of entry of judgment and will direct an immediate entry of judgment. Thus, the order will be appealable under 54(b).

In addition, our order will be appealable under 28 U.S.C. § 1292(a)(1). The court in *Geldermann* held that an interlocutory order expressly granting injunctive relief is appealable under § 1292(a)(1). *See Geldermann,* 975 F.2d at 697. Our order will enjoin future claims against settling defendants. Thus, our order will be appealable as an interlocutory order expressly granting injunctive relief under § 1292(a)(1). Defendant Schreier's motion is therefore denied as moot.

IT IS THEREFORE ORDERED that the joint motion by plaintiff TBG and defendants and third-party plaintiffs John G. Pappajohn and Robert H. Mann, Jr. for a judgment and order approving and implementing the proposed settlement agreement (Doc. # 679) is granted. Said judgment and order, in substantially the same form as submitted by the parties, will be entered and filed by the court upon receipt of the executed stipulation of dismissal in the clerk's office.

IT IS FURTHER ORDERED that the joint motion of plaintiff and defendant

---

**23.** Mann received $3,250,000 and Pappajohn received $125,000 pursuant to the purchase of stock options in CHSI by TBG.

Shook, Hardy, and Bacon for a judgment and order approving and implementing the proposed settlement agreement (Doc. # 756) is granted. Said judgment and order, in substantially the same form as submitted by the parties, will be entered and filed by filed by the court upon receipt of the executed stipulation of dismissal in the clerk's office.

IT IS FURTHER ORDERED that defendant Schreier's motion for an order to certify a controlling question of law (Doc. # 789) is denied.